# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs December 2, 2014

## STATE OF TENNESSEE v. CARMEL BORUM aka CARNEL BORUM

### Appeal from the Criminal Court for Shelby County
### No. 12-03285     W. Mark Ward, Judge

### No. W2014-00179-CCA-R3-CD  - Filed January 22, 2015

The defendant, Carmel Borum, also known as Carnel Borum, appeals his Shelby County Criminal Court jury convictions of two felonies – theft and evading arrest.  He received an effective sentence of 18 years as a persistent offender.  On appeal, he claims that the trial court erroneously admitted testimony about the value of the property in question and that the evidence was insufficient to support the convictions.  Based upon our review of the record, the briefs, and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and ROGER A. PAGE, JJ., joined.

Eric Mogy (on appeal) and Eran Julian (at trial), Memphis, Tennessee, for the appellant, Carmel Borum aka Carnel Borum.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilbur, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Pamela Fleming and Omar Malik, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

At trial, Michael Creswell testified that, on September 6, 2012, he was living at 2946 Mountain Terrace in Memphis.  On that date at approximately 10:30 p.m., he discovered that someone had stolen his white 1996 Buick Century automobile from his open carport.  Mr. Creswell testified that the car bore a Lafayette County, Mississippi license plate, and, at trial, he identified a picture of the car.

When asked by the prosecutor, "What was the value of that car to you?," Mr.

Cresell responded, "I would price it around two thousand dollars." Responding to the follow-up question, "[I]f you were to list that car to sell back around the time period it was stolen, what would you sell it for?," Mr. Creswell said, "I would want at least two thousand for it."

Mr. Creswell testified that, when he discovered the car missing, he called 9-1-1 and relayed to the 9-1-1 operator the make, model, and color of the car and the license number. Approximately three hours after Mr. Creswell discovered the theft, a police officer telephoned him and told him the car had been recovered. Mr. Creswell testified that the steering column had been broken and that "whoever it was who stole the car had drove [sic] it on a flat . . . for so long it flattened the rim out and the rim started cutting into the strut tower."

On cross-examination, Mr. Creswell testified that, two weeks prior to the theft, he had spent $1,500 having his car's transmission rebuilt. Mr. Creswell opined that, had he taken the car to a dealer to sell it, he would expect to get $1,500 to $2,000 for it.

Robert L. Strickland, an officer with the Memphis Police Department ("MPD"), testified that while he was on patrol in the early morning hours of September 7, 2012, he received a police alert that a white Buick Century had been stolen. Officer Strickland testified that he saw a white Buick Century and that he followed the Buick while he conferred with the dispatcher. The officer was informed that the stolen car bore a Mississippi license plate. Officer Strickland waited for a second police car to join him, and then he activated his blue lights and siren to stop the Buick. The Buick, however, did not stop, and Officer Strickland pursued it for "several miles," recalling that the Buick ran "several stop lights." After the police supervisors told Officer Strickland and the other pursuing officers that the Buick had "blown a tire," the officers turned off their emergency equipment and observed the Buick which, at this time, was traveling at about 30 to 35 miles per hour. Despite the loss of a tire, the Buick traveled another three miles, followed by "eight to ten" police cars.

During the pursuit, Officer Strickland noticed that the Buick was being driven by a "male black" individual. After the Buick stopped, Officer Stickland used his cruiser to prevent the driver from exiting the driver's side of the Buick; however, as the officer was getting out of his cruiser, he saw the Buick's driver running away. The officer gave chase on foot while radio-broadcasting the man's description to his fellow officers who had joined in the search for the fleeing man. Officer Strickland suspended his pursuit when an 80-to-90-pound pit bulldog came toward him. Nevertheless, the officer saw the same man about five minutes later after the man had been captured by officers on the perimeter of the search location. Officer Strickland testified that the man in custody, the defendant, was sweating

and limping and was the same person who ran from the Buick and whom he had been chasing.

Officer Strickland reviewed the photograph that Mr. Creswell had earlier identified as being a picture of his Buick, and the officer testified that the car in the picture was the car he pursued on September 7, 2012.

Officer Strickland testified that he saw the profile of the driver's face during the chase and again when the man ran behind the police car after the vehicles had stopped. The officer iterated that the defendant was the same man who had driven the Buick.

MPD Officer Clarence Farwell testified that he participated in the events that led to the defendant's arrest on the night of September 6-7, 2012. He identified the defendant as the person who was apprehended following the pursuit of a white Buick Century. Officer Farwell said that the pursuing police cars were employing their blue lights and sirens in an effort to stop the Buick. During the pursuit, the left front tire of the Buick "blew out." The Buick traveled on, and although the officers discontinued their active pursuit, they followed and monitored the Buick as it drove on the rim of the left front wheel. Officer Farwell testified that he maintained the Buick in his sight until it stopped. When it stopped, Officer Strickland blocked exit from the driver's side door with his police car, and Officer Farwell positioned his car on the passenger side of the Buick to prevent the door on that side from being opened. Officer Farwell testified that the defendant crawled out the passenger side window and across the hood of Officer Farwell's car and ran away. The officer testified that, when the defendant ran from the parked cars, he ran in front of the cars and not around the rear.

Officer Farwell stayed with the police cars while Officer Strickland gave chase on foot. Officer Farwell saw the defendant again four or five minutes later when other officers brought him back to Officer Farwell's location. Officer Farwell identified the pictures of the Buick that showed the Mississippi license plate and the "busted steering column."

On cross-examination, Officer Farwell testified that the police performed no fingerprint analyses on any of the physical evidence.

The State rested its case, and the defendant called Lieutenant Michaelle Byers of the Shelby County Sheriff's Office who testified that she maintained records for the office and that the records contained intake photographs of the defendant dated September 7, 2012. She introduced the photographs into evidence. On cross-examination, Lieutenant Byers testified that the defendant was taken to "the Med" before he was brought to the jail. She

stated that he was treated for dog bites on his hands. She said the report also indicated that the defendant had a swollen left knee.

The jury convicted the defendant of theft of property valued at $1,000 or more but less than $10,000, a Class D felony, and of evading arrest, a Class E felony. The trial court sentenced the defendant respectively to consecutive Department of Correction terms of 12 years and six years, yielding an effective sentence of 18 years. The defendant filed a timely but unsuccessful motion for a new trial and then a timely notice of appeal.

The defendant complains about Mr. Creswell's testimony concerning the value of the stolen Buick, and he couches the issue in terms of the trial court's erroneously admitting Mr. Creswell's testimony as to value. The State does not address this issue as an evidentiary issue; rather, it treats the issue of value as a component of the defendant's sufficiency-of-the-evidence claim. Nevertheless, casting the issue as evidentiary error avails the defendant nothing. Because he did not present the issue as evidentiary error in his motion for new trial, he has waived the issue as cast in this form. *See* Tenn. R. App. P. 3 (providing that "in all cases tried by jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for new trial; otherwise, such issues will be treated as waived"). That said, we will address the issue of value further in our treatment of the claim of insufficient evidence.

When an accused challenges the sufficiency of the evidence, the appellate court considers the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979), regardless whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence, *State v. Winters*, 137 S.W.3d 641, 654-55 (Tenn. Crim. App. 2003). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011). Especially inimical to the defendant's claim is the well-rooted axiom that the appellate court neither re-weighs the evidence nor substitutes its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. Also, the credibility of the witnesses, the weight and value of the evidence, and all other factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). The appellate court affords the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

In the present case, the challenge to the sufficiency of the evidence, apart from

the challenges to the value of the stolen property, centers around the defendant's claim that the State failed to prove his identity as the perpetrator of the theft.

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103(a). The offense is a Class D felony when the value of the property stolen is $1,000 or more but less than $10,000. *Id.* § 39-14-105(a)(3).

The offense of evading arrest is committed by one who, "while operating a motor vehicle on any street, road, alley or highway in this state," intentionally flees or attempts to elude "any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop." *Id.* § 39-16-603(b)(1). This offense is a Class E felony. *Id.* § 39-16-603(b)(3).

Mr. Creswell testified that, at the time of the theft, his vehicle was worth from $1,500 to $2,000. This assessment places the value well within the range of theft described in Code section 39-14-105(a)(3). Thus, the evidence was sufficient to establish theft as a Class D felony.

The defendant claims that the State failed to prove that the defendant was the person who stole the Buick. Clearly, however, the defendant was the person possessing and exercising control over the vehicle a short time after the theft occurred. Thus, the evidence circumstantially established the defendant's commission of theft beyond a reasonable doubt.

Accordingly, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE